## Alex Williams v. The State.

No. 7804.   Decided June 20, 1923.

Rehearing denied December 5, 1923.

1.—Murder—Special Venire—Challenge to Array—Jury Wheel.

The irregularity of permitting the presence of one not named in the statute, while drawing a list of names from the jury wheel, might, under some circumstances, be sufficient to justify the quashing of the jury panel or venire, yet where the State seemingly met the burden imposed upon it by showing that nothing was done, or occurred, from which any injury could result there was no reversible error.

2.—Same—Sufficiency of the Evidence—Conflict of Testimony.

Where, upon trial of murder and conviction of said offense, the testimony is conflicting as to whether the killing was self-defense or otherwise, but sufficient to sustain the conviction under a proper charge of the court, there is no reversible error.

3.—Same—Murder—Manslaughter—Malice.

Where appellant insisted that the evidence did not support the conviction of murder and that the killing could only be manslaughter, yet there being sufficient evidence in the record showing malice on the part of the defendant, the judgment must be affirmed.

4.—Same—Rehearing—Malice—Express Malice—Implied Malice.

Aside from the question of antecedent quarrels and hostile attitudes, and notwithstanding evidence of the resumption of friendly relations, there is sufficient evidence to raise the issue of murder, and it was not necessary to prove express malice, but implied malice is sufficient. Following Lowe v. State, 206 S. W. Rep., 519, and other cases.

5.—Same—Sufficiency of the Evidence—Malice Aforethought.

The homicide being conceded, the testimony touching the incidents attending the homicide being conflicting and the evidence revealed in the dying declaration being such as, if believed, would warrant the inference at least of implied malice aforethought, the judgment must be affirmed.

Appeal from the District Court of Bexar.   Tried below before the Honorable S. G. Tayloe.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

W. C. Linden, for appellant.

R. G. Storey, Assistant Attorney General, for the State.   On question of jury wheel, King v. State, 234 S. W. Rep., 1107; Ex parte Holland, 238 id., 654.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Bexar County of murder, and his punishment fixed at thirty-five years in the penitentiary.

When the case was called for trial appellant presented his challenge to the array of jurors and his motion to quash the special venire. Bexar county is under the jury wheel law. It is made to appear from the evidence heard upon the presentation of the motion and challenge above referred to, that from August 1st to 15th, which time is fixed by Article 5151, Revised Civil Statutes, for filling the jury wheel in counties where said law applies, the tax assessor's roll of said county had not been made up and the only way to ascertain from the documents in the tax assessor's office who were qualified jurors of said county would be by examination of the inventories on file for the current year in the office of said assessor. The jury wheel of said county when filled at the time fixed by statute in the year 1922, the year in question, was filled from the poll tax list of said county which was then available. After hearing the evidence the learned trial judge overruled appellant's challenge and motion, but offered to appellant, however, the opportunity to compare the special venire list with the inventoried qualified jurors of said county, and further agreed to strike from said special venire list the names of any veniremen which did appear on the tax assessor's list by comparison. It was further shown during said hearing that because of inability to get the names of qualified jurors from the tax assessor's rolls in August as fixed by law, the custom of filling the jury wheel from the poll tax list of qualified jurors of the county had prevailed in Bexar County since the passage of the jury wheel law. We do not think the action of the trial court in the above particulars of any substantial injury to appellant, nor to present error which would call for a reversal of this case. Nor do we think there is merit in the contention that a son of a deputy tax collecter of said county aided in the transcription of names from the cards drawn from the jury wheel to the special venire list. The father, a deputy tax collector, was present and testified that he personally supervised the work of his son in writing the names on the jury list after the cards were drawn from the wheel and that he knew it was correctly done. The son drew no cards from the wheel and placed none in same. Article 5154 of our Revised Civil Statutes contains a provision that no other person than those named shall be permitted to be present when the cards are drawn from the jury wheel, but there seems no provision that a violation of this inhibition should result in quashing of the venire or panel. Sec. 14 of the original jury wheel law (see Chap. 139, Acts Regular Session, 1907) does provide that if any person violates any of the provisions of the act he might be punished, but we do not conclude that this necessitates the quash-

96 T. C.—10.

ing of the venire or the jury panel. The irregularity of permitting the presence of one not named in the statute might under some circumstances be sufficient to justify the quashing of the jury panel or venire, but if the State meets the burden seemingly imposed upon it by proof of such irregularity, by showing that nothing was done or occurred from which any injury could result, we would not think it proper to so quash said venire.

The special charge No. 2 requested by appellant seems fully covered by paragraph 8 of the court's main charge. Substantially the same defensive issues were presented and in almost the same terms.

There is much conflict in the testimony as to whether the action of appellant in shooting and killing deceased was in self-defense or otherwise but these are matters for the jury. The objections to the court's charge were not carried forward in bills of exception and do not present any matters worthy of serious consideration.

It is insisted that the evidence does not support a conviction of homicide of a higher degree than manslaughter. There is evidence in the record of a refusal of deceased to wait for appellant and take him home in his car, some time before this homicide, and that on that occasion appellant became angry with deceased and cursed and abused him. There is also testimony that on the afternoon of the homicide and while appellant was at the home of deceased, he became angry over the refusal of a State witness to allow him to ride a certain wild horse. From the record it would seem that reference to this same matter caused the fight down at the home of appellant some time after appellant had been at the home of deceased, which fight is claimed by appellant's witnesses to be immediately prior to the fatal shooting. There is also testimony that while appellant was at the home of deceased on the afternoon of the homicide he took a gun and pointed it at deceased and remarked, in substance, "Now G—d d—n you, I have got you." From the testimony relating to the dying declaration of deceased we quote the following:

"He . . . first told me that Mary Williams and Biddie Williams held on to him all the time and Alex was beating him—said they held on to him all the time; and he said that he would sorter punch them off, and he said he could not do nothing hardly; Mary Williams took his knife out of his pocket; he didn't have nothing to defend himself with, and he said that Alex slipped out with his gun and shot him."

We are unwilling to sanction the proposition that this record is so without testimony showing a killing upon malice as to convince us that it should be reversed upon that proposition.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

December 12, 1923.

MORROW, PRESIDING JUDGE.—The position taken by the appellant in his motion and oral argument is that the evidence does not warrant a conviction for the offense of murder.

The weight to be given to evidence of antecedent, quarrels and hostile attitude of the appellant towards the deceased would remain a question for the jury, notwithstanding the evidence of the resumption of friendly relations. Aside from this, however, we think the evidence is such as to preclude the authority of this court to hold, as a matter of law, that the issue of murder was not raised. The homicide took place at the home of the appellant. The eyewitnesses gave testimony of a cogent nature presenting the issues of manslaughter and self-defense.

The dying declaration which is copied in the original opinion is opposed to the mitigating and defensive testimony adduced upon behalf of the appellant. It appears from the dying declaration that the witnesses, relied upon by the appellant, held the deceased while the appellant was beating him; that the deceased was unable to do anything much; that Mary Williams took the knife of the deceased out of his pocket and that he had nothing with which to defend himself; that the appellant slipped out with his gun and then shot the deceased. Whether this or the theory presented by the appellant and his witnesses was the true one was necessarily a question for the jury to answer. It is not our understanding that it was essential that the State prove express malice. The act of the thirty-third Legislature, in amending the statute on murder, did not change the law as previously construed by this court, authorizing a conviction for the offense of murder, where the death penalty was not assessed, *upon implied malice aforethought*. See Shaw v. State, 71 Texas Crim. Rep. 630; Cook v. State, 71 Texas Crim. Rep. 537; Andrus v. State, 73 Texas Crim. Rep., 334; Sorrell v. State, 74 Texas Crim. Rep. 505; Lowe v. State, 84 Texas Crim. Rep., 236, 206 S. W. Rep., 519.

The homicide being conceded, the testimony touching the incidents attending the homicide being conflicting and the evidence revealed in the dying declaration being such as, if believed, would warrant the inference, at least, of implied malice aforethough, the conclusion expressed in the original opinion must be adhered to.

The motion is overruled.

*Overruled.*